**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0459-24

COUNTY OF ESSEX and
RONALD L. CHARLES,

 Plaintiffs-Respondents,

v.

VERA CORNELIUS LANGLEY
and CURTIS LANGLEY,

 Defendants-Appellants.

_____

   Argued March 3, 2026 – Decided May 7, 2026

   Before Judges Chase and Augostini.

   On appeal from the Superior Court of New Jersey, Law
   Division, Essex County, Docket No. L-3911-23.

   Luretha M. Stribling (Luretha M. Stribling, LLC)
   argued the cause for appellants.

   Kathryn V. Hatfield argued the cause for respondents
   (Hatfield Schwartz Law Group LLC, attorneys;
   Kathryn V. Hatfield, of counsel and on the brief).

PER CURIAM

Defendants Vera Corenelius Langley and Curtis Langley[1] appeal from the trial court's October 10, 2024 denial of their order to show cause (OTSC) application under the Uniform Public Expression Protection Act (UPEPA), N.J.S.A. 2A:53A-49 to -61, also commonly referred to as the Anti-SLAPP (strategic lawsuits against public participation)[2] statute. We affirm.

I.

This appeal arises from defamation claims stemming from a series of emails sent from accounts set up to receive and relay work-related complaints at the Essex County Correctional Facility (ECCF). The emails included criticism of workplace conditions, allegations of racism, unethical conduct, and favoritism directed at the facility's administration.

As a result, on June 19, 2023, plaintiffs, the County of Essex and Ronald L. Charles, Director of the ECCF, filed a verified complaint alleging defamation, invasion of privacy, false light, intentional infliction of emotional distress, unlawful use of equipment, and civil conspiracy, and an OTSC seeking restraints

---

[1] Because defendants have the same surname, we refer to them by their first names to avoid confusion. We intend no disrespect.

[2] In 2023, following the example of other states, New Jersey passed UPEPA to deter SLAPP lawsuits filed to intimidate citizens and chill their right to free speech. LoBiondo v. Schwartz, 199 N.J. 62, 85 (2009).

A-0459-24

against fictitious entities. After being granted expedited discovery, plaintiffs obtained information as to the identities of the owners of the email addresses and thereafter filed an amended complaint naming defendants[3] as owners of one of the email accounts at issue. Vera and Curtis, both now retired, are former spouses who were employed by ECCF as corrections officers.

Following her retirement, Vera established the email account at issue, having it function as a means for ECCF employees to convey anonymous concerns relating to workplace conditions in the jail. Allegedly, Vera would then "vet" the concerns and, if appropriate, post the emails, and send them to the administration.

The contents of the emails distributed from the email address primarily comprised statements, opinions, and workplace observations related to ECCF working conditions, allegations of favoritism, safety concerns, and criticisms of administrative actions, particularly against Director Charles. Plaintiffs' complaint alleged these emails were defamatory, including accusations of

---

[3] It is disputed whether the account is owned by both defendants, or solely by Vera. Defendants assert that Curtis had nothing to do with the email account and has been separated from Vera for years.

3

criminal activity, unethical behavior, and other statements purportedly injurious to their reputations.

For instance, an email sent to approximately eighty individuals accused Director Charles of being "an egotistical, narcissistic, insecure baby." Other examples from emails refer to Director Charles as "the Penguin" that "[h]e had this big dog and pony show for women in corrections but didn't even have the decency to reach out to one of our female sergeants that was viciously attacked by an inmate," and that Charles shows favoritism to a "union county girl that just winks at him." The emails also accused Director Charles of "covering up" sexual harassment in the workplace and of mismanaging an employee's disability status. Notably, some of these emails discussed a prior workplace incident involving Curtis and his suspension.

On February 20, 2024, defendants filed a motion to dismiss the amended complaint for failure to state a claim pursuant to Rule 4:6-2(e). On July 29, 2024, following oral argument, the court denied defendants' motion.[4]

The next day, defendants filed an OTSC pursuant to UPEPA, seeking expedited dismissal of the complaint. Plaintiffs filed opposition, and after oral

---

[4] The record provided on appeal does not include the transcript from the motion to dismiss hearing on July 29. See R. 2:5-4.

A-0459-24

argument on October 10, 2024, the trial court denied defendants' OTSC as untimely and without good cause for the delay, but stayed the proceedings pending appellate review.

In its ruling, the trial court noted that "[p]laintiffs served defendants with the amended complaint on December 6, 2023. . . . [D]efendants subsequently filed the instant [OTSC] on July 30, 2024, which [was] six months after the filing deadline." The court rejected defendants' good cause argument, asserting that they were unaware of the new UPEPA law, which requires the filing of an OTSC to show cause "no later than [sixty] days after a party is served with a complaint." As the court aptly noted, defendants did not file their OTSC until 178 days after the filing deadline; therefore, the court did not find "good cause" to justify their late filing.

The court further explained that, even if the OTSC had been timely filed, defendants' claims had already been considered and deemed without merit in the context of the prior motion to dismiss. The court concluded that plaintiffs pled "enough facts at [the] pleading stage to allow them to . . . glean a cause of action, which relief could be granted."

On appeal, defendants argue the trial court erred by: (1) not applying the tenets of UPEPA to the facts of this case and not finding that this case fell

5

squarely within UPEPA's ambit; (2) not finding good cause for the late filing of their OTSC; and (3) failing to understand UPEPA's intent to address actions aimed at inhibiting free speech.

## II.

We review a trial court's decision to grant or deny a motion to dismiss pursuant to Rule 4:6-2(e) as well as a motion for summary judgment de novo, applying the same standard as the trial court. Smith v. Datla, 451 N.J. Super. 82, 88 (App. Div. 2017) (citation omitted). "A trial court's 'interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference.'" Satz v. Starr, 482 N.J. Super. 55, 62 (App. Div. 2025) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Twp. of Manalapan, 140 N.J. 366, 378 (1995) (citations omitted)).

We review a court's statutory interpretation and legal conclusions de novo. Wunsch v. Cte Republicans for Englewood Cliffs, 483 N.J. Super. 231, 245 (App. Div. 2025) (citing In re H.D., 241 N.J. 412, 418 (2020)). "[S]tatutory construction begins with an examination of the plain language of the statute, 'ascrib[ing] to the . . . words their ordinary meaning and significance.'" Wunsch, 483 N.J. Super. at 245 (quoting State v. Higginbotham, 257 N.J. 260, 280 (2024) (omission and second alteration in original)). We "apply to the statutory terms

A-0459-24

the generally accepted meaning of the words used by the Legislature." Cupido v. Perez, 415 N.J. Super. 587, 594 (App. Div. 2010) (citing Patel v. N.J. Motor Vehicle Comm'n, 200 N.J. 413, 418 (2009)).

UPEPA "applies to a cause of action . . . against a person based on the person's":

> (1) communication in a legislative, executive, judicial, administrative, or other governmental proceeding;
>
> (2) communication on an issue under consideration or review in a legislative, executive, judicial, administrative, or other governmental proceeding; or
>
> (3) exercise of the right of freedom of speech or of the press, the right to assembly or petition, or the right of association, guaranteed by the United States Constitution or the New Jersey Constitution, on a matter of public concern.
>
> [N.J.S.A. 2A:53A-50(b).]

UPEPA provides for an expeditious dismissal procedure unless one of its exceptions applies. N.J.S.A. 2A:53A-51. "[A] party served with a 'pleading' that asserts a cause of action to which [UPEPA] applies . . . may file an application for an [OTSC] . . . to dismiss the cause of action." Wunsch, 483 N.J. Super. at 245 (quoting N.J.S.A. 2A:53A-51). The order to show shall be filed"[no] later than [sixty] days after a party is served with a . . . complaint."

7

A-0459-24

N.J.S.A. 2A:53A-51. This deadline for filing an OTSC may be extended "on a showing of good cause." Ibid.

"Good cause" is a term that "evades a precise delineation." Estate of Semprevivo v. Lahham, 468 N.J. Super. 1, 14 (App. Div. 2021) (citing Ghandi v. Cespedes, 390 N.J. Super. 193, 196 (App. Div. 2007)) (internal quotation marks omitted). "Good cause" is defined as a "legally sufficient reason", and the burden of proof is "often . . . placed on a litigant (usually by court rule or order) to show why a request should be granted or an action excused." Black's Law Dictionary 275 (12th ed. 2024). The application of good cause requires the exercise of "sound discretion in light of the facts and circumstances of the particular case considered." Estate of Semprevivo, 468 N.J. Super. at 14 (quoting Ghandi, 390 N.J. Super. at 196 (quoting Delaware Valley Wholesale Florist, Inc. v. Addalia, 349 N.J. Super. 228, 232 (App. Div. 2002))).

Moreover, "ignorance of one's rights or mere ambivalence by the claimant have never been found to be sufficient reasons on their own to allow [a] late filing." Escalante v. Twp. of Cinnaminson, Cinnaminson Mem'l Park, 283 N.J. Super. 244, 250 (App. Div. 1995) (citing Abel v. City of Atlantic City, 228 N.J. Super. 360, 367–68 (App. Div. 1988); Lutz v. Township of Gloucester, 153 N.J. Super. at 466–67 (App. Div. 1977); Lutz v. Semcer, 126 N.J. Super. 288, 297

A-0459-24

(Law Div. 1974) (last citation omitted)).  Furthermore, ignorance of the law or court rules, or an inability to comprehend the law, does not excuse the duty to comply with it.  State v. Murray, 162 N.J. 240, 246 (2000); State v. Dugan, 289 N.J. Super. 15, 19-21 (App. Div. 1996).

## A.

We begin by addressing defendants' argument that the court erred by not finding good cause for the late filing of their OTSC.  UPEPA provides litigants with a two-step procedure for an expedited review of a lawsuit's merits, and if appropriate, awards costs, attorney's fees, and reasonable litigation expenses.  N.J.S.A. 2A:53A-55, -58.  The text of the statute is clear as to the filing deadline for an expedited relief application.  Higginbotham, 257 N.J. at 280 ("[S]tatutory construction begins with an examination of the plain language of the statute").  Specifically, UPEPA mandates that the OTSC be filed within sixty days, and only upon a showing of good cause may the court extend this filing deadline.  N.J.S.A. 2A:53A-51 (emphasis added).

Plaintiffs contend that defendants' OTSC was procedurally barred under UPEPA because the matter was initially filed before UPEPA's effective date.  The Legislature approved UPEPA on September 7, 2023, and it took "effect on the [thirtieth] day after enactment and shall apply to a civil action filed or cause

9

of action asserted in a civil action or after the effective date." S. 2802 (2023). Plaintiffs filed their initial verified complaint on June 19, 2023. After obtaining information via subpoena as to the owners of the email accounts in question, plaintiffs filed their first amended complaint naming Vera and Curtis as defendants on December 5, 2023. Defendants were served with the first amended complaint on December 6, 2023. Therefore, we are satisfied that because the first amended complaint naming defendants was served after UPEPA's effective date, defendants' OTSC is not procedurally barred on those grounds.

However, we are satisfied that the trial court did not misapply its discretion by dismissing defendants' OTSC application as untimely because it exceeded the statutorily mandated sixty-day deadline. Defendants argue that the court failed to construe the good cause standard liberally, and had it done so, would have allowed the late filing to proceed. Moreover, defendants contend that because the law had only recently been enacted and neither counsel was familiar with it, the court should have found good cause for the late filing. We are unpersuaded.

We recognize that the Legislature requires UPEPA to "be broadly construed and applied to protect the exercise of the right of freedom of speech

10

. . . . [and] the right to . . . petition . . . guaranteed by the United States Constitution or the New Jersey Constitution." N.J.S.A. 2A:53A-59. However, "UPEPA mandates the court hear the [OTSC] 'as expeditiously as possible[,]' N.J.S.A. 2A:53A-53, and that '[t]he court shall rule on an [OTSC] . . . as soon as practicable after a hearing.'" Satz, 482 N.J. Super. at 64 (citing N.J.S.A. 2A:53A-56). This expedited process aligns with the statute's intent to "protect residents against frivolous, ill-intentioned lawsuits and insulate them from financial hardships these cases can produce." Id. at 65 (quoting Press Release, Off. of the Governor, Governor Murphy Signs Bipartisan Bill Protecting Against Lawsuits Designed to Suppress Free Speech, at 1 (Sept. 7, 2023)); see also LoBiondo v. Schwartz, 199 N.J. 62, 86 (2009) ("[i]n an effort to deal with and deter SLAPP suits, a large number of state legislatures have responded.").

Having determined that UPEPA's timeframe applied to the date of service of the first amended complaint—December 6, 2023—the trial court properly found that the OTSC—filed on July 30, 2024—was filed over six months after service of the amended complaint. The only reason offered for defendants' late filing was their counsel's lack of awareness of the new law. The record supports the trial court's findings, and we discern no error in its determination that

11

counsel's ignorance of the newly enacted statute was not good cause to extend the statute's sixty-day deadline.

B.

Turning to defendants' remaining arguments, the court denied defendants' application on substantive grounds for the same reasons it had previously denied defendants' motion to dismiss for failure to state a cause of action. Although the court determined that defendants' OTSC was time-barred under UPEPA, it concluded, "at this pleading state," plaintiffs had pled sufficient facts from which a cause of action could be gleaned and relief granted.

Based upon our review of the record and the court's determination that defendants' UPEPA OTSC was time-barred, we hold that defendants' remaining arguments are without sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E).

We note only the following brief comments. Defendants argue the court erred in denying their OTSC by failing to examine the email postings and the causes of action in the verified complaint as well as not determining whether a prima facie case had been established. However, as the trial court correctly noted, the OTSC filed under UPEPA was preceded by a motion to dismiss adjudicated the day before the filing of their OTSC. Indeed, the next day, after

12

A-0459-24

learning of the new law during oral argument, defendants filed the OTSC. As the court aptly noted, no new arguments were proffered during the OTSC hearing. We discern no misapplication of the court's discretion under these circumstances.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

13